THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> *ex rel.* CHRISTOPHER N. ) <br> McCUTCHEON, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> QBR, LLC; VALLEY CENTER FOR ) <br> NERVE STUDIES AND ) <br> REHABILITATION, INC.; DERBY ) <br> MEDICAL BILLING SERVICES, INC.; ) <br> ERIC R. BECK; JOHN ) <br> HORNBUCKLE; ORTHOPLUS, LLC; ) <br> AND BRIAN BOWMAN, ) <br> ) <br> Defendants. ) | CIVIL ACTION NUMBE <br> 5:17-CV-0462-MHH |

# MEMORANDUM OPINION

Relator Christopher McCutcheon has asked the Court to enter a default judgment against defendants QBR, LLC and John Hornbuckle. (Doc. 58). By separate order, the Court has denied the motion as to Mr. Hornbuckle because of his appearance in this case. (Docs. 79, 84). Because QBR has not appeared, the Court will enter a default judgment as to QBR on Mr. McCutcheon's claims under the False Claims Act.[1]

---

[1] At a telephone conference on October 10, 2023 to discuss Mr. Hornbuckle's pending motions, (Docs. 60, 62), Mr. Hornbuckle indicated that he filed a motion for relief from judgment only on

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, as in this case, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, if the defendant is not an infant or an incompetent person, a court may enter a default judgment against the defendant because of the defendant's failure to appear or defend. Fed. R. Civ. P. 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, the clerk entered default against QBR, LLC on June 26, 2023 because QBR did not respond to Mr. McCutcheon's complaint after being served. (Doc. 54). Therefore, the Court may consider Mr. McCutcheon's motion for default judgment.

To enter a default judgment, a federal district court must have jurisdiction over the subject matter of the case. The Court has federal subject matter jurisdiction in this case under 28 U.S.C. § 1331. In the complaint, Mr. McCutcheon alleges that QBR violated a federal statute, namely the False Claims Act, 31 U.S.C. § 3729 *et seq*. (Doc. 1, p. 11, ¶¶ 29-30). Because a federal question appears on the face of Mr. McCutcheon's complaint, this Court has subject matter jurisdiction over this

---

his behalf. The Court explained that Mr. Hornbuckle could represent himself in this case, but because QBR, LLC is an entity, QBR must be represented by an attorney. See *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) (An artificial entity, like an LLC, "can act only through agents, cannot appear pro se, and must be represented by counsel."). A transcript of the telephone conference in available upon request. No attorney has entered an appearance for QBR, and QBR has not defended itself in this action despite proper service.

case. *See, e.g.*, *Kemp v. Int'l Bus. Machines Corp.*, 109 F.3d 708, 712 (11th Cir. 1997).

To enter a default judgment, a federal district court also must have personal jurisdiction over the defendant. *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("When entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.") (alteration omitted). The record here indicates that QBR, LLC is a company with its principal office in Huntsville, Alabama. (Doc. 1, p. 8, ¶ 21). The inclusion of LLC in QBR's name indicates that the entity is a limited liability company. Mr. McCutcheon alleges that the company is a corporation. (Doc. 1, p. 8, ¶ 21). According to the Alabama Secretary of State's business entity records, QBR is a domestic limited liability company with a registered office in Huntsville, Alabama. https://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=000025409&page=name&file=&type=ALL&status=ALL&place=ALL&city= (last visited Oct. 1, 2024).[2]  Mr.

---

[2] The Court takes judicial notice of the Alabama Secretary of State's public business entity records. *Birmingham Plumbers v. Iron Mountain Constr., Inc.*, No. 2:15-CV-00499-MHH, 2016 WL 4137972, at *3 (N.D. Ala. Aug. 4, 2016) ("Federal Rule of Evidence 201 provides that a court may take judicial notice of a fact that is not subject to reasonable dispute if it 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.' Fed. R. Evid. 201(b)(2).  The information found on the website of the Alabama Secretary of State falls within the purview of Rule 201(b)(2).").

McCutcheon served QBR in Alabama. (Doc. 36). On this record, the Court is satisfied that it may exercise personal jurisdiction over QBR.

Even when a district court has jurisdiction over a case and over a defendant, a district court may not automatically grant a motion for default judgment. A district court must review the sufficiency of the complaint and its underlying substantive merits to determine whether a moving party is entitled to default judgment. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). A court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and that a sufficient basis exists in the pleadings for the relief sought. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Construction Co., Ltd. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal quotation marks omitted)).

To establish liability under the False Claims Act, a relator must prove "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendants to the United States for payment or approval; (3) with the knowledge that the claim was false." *United States v. R&F Props. of Lake Cnty., Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005). In FCA cases, knowledge of an agent of the corporation is imputed to the corporation when the agent acts for the benefit of the corporation

and within the scope of his employment. *Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983).

Mr. McCutcheon has alleged that QBR, through its officer and agent John Hornbuckle, knowingly caused false claims to be presented to the United States in violation of 31 U.S.C. § 3729(a)(1)(B). Mr. McCutcheon alleges that from 2011 through December 2013, he was involved in the business operations of QBR. (Doc. 1, p. 5, ¶¶ 3-4). Mr. Hornbuckle recruited Ms. McCutcheon to join QBR as an investor and co-owner. (Doc. 1, p. 6, ¶¶ 7-8). Mr. Hornbuckle had a "51% ownership interest" in QBR, and Mr. McCutcheon had a "49% ownership interest" in QBR. (Doc. 1, pp. 6, 10 ¶¶ 8, 25). "QBR arranged and schedule[d] healthcare staffing, logistics management, telemedicine, and diagnostic equipment necessary to perform EMG, nerve conduction, ultrasound[,] and other diagnostic tests on-site at the offices of various healthcare providers." (Doc. 1, p. 8, ¶ 21). Mr. Hornbuckle was the president, CEO, and "primary salesperson and driving force" of QBR. (Doc. 1, p. 10, ¶ 25).

According to Mr. McCutcheon, in 2012, QBR and Valley Nerve agreed to arrange referrals of nerve testing to Valley Nerve and entered a "Management Services Agreement." (Doc. 1, p. 22, ¶ 68). Mr. McCutcheon alleges that QBR "provided referrals from various medical professionals to Valley Nerve" for electrodiagnostic testing "by paying commissions to medical professionals based on

the volume or value of referrals they received." (Doc. 1, p. 21, ¶ 61). According to Mr. McCutcheon, QBR received 75% of the amounts collected," and Valley Nerve "received a 25% kickback for every claim paid." (Doc. 1, p. 23, ¶ 72). The "costs of performing tests were reimbursable by Federal payors, which incentivized all of the participants to increase the volume of testing." (Doc. 1, p. 21, ¶ 60). Mr. McCutcheon asserts that referring physicians did not determine "whether the electrodiagnostic tests, physical therapy services, and occupational therapy services Valley Nerve provided were medically necessary" but were "coding all available tests at a maximum reimbursable level, regardless of whether such tests were necessary or helpful." (Doc. 1, pp. 21-22, ¶¶ 63-64).

Beginning in July 2012, QBR worked with Brian Bowman and OrthoPlus to have salespersons with OrthoPlus, a "durable medical equipment company," "pitch the services of QBR, which really were the services provided by Valley Nerve, to doctors stating that testing could be done on site, the doctors could keep their patients in-house without referring them to other providers, and [] the doctors could receive reimbursement for the electrodiagnostic tests, physical therapy services, and occupational therapy services that were provided." (Doc. 1, p. 30, ¶ 99). In return, "OrthoPlus received kickbacks and incentive payments from QBR" ranging between $25 and $75 per test "for each test referred by a physician who came to QBR and Valley Nerve through the relationship with OrthoPlus." (Doc. 1, p. 31, ¶ 101). QBR

6

paid OrthoPlus "approximately $712,792" for "commissions and kickbacks based on the volume and value of [OrthoPlus's] referrals." (Doc. 1, p. 31, ¶ 102).

According to Mr. McCutcheon, because of the relationship between Valley Nerve, referring physicians, and QBR, Derby Billing, "which managed the billing functions in [the] referral relationship," "submitted more than $2 million dollars of claims to Medicare, Medicaid, and Tricare for electrodiagnostic tests" under the defendants' scheme. (Doc. 1, p. 28, ¶¶ 87, 89). The claims "contained certifications by Valley Nerve that the providers [and] Valley Nerve . . . were in compliance with the Anti-Kickback Statute," but these certifications "were knowingly false.". (Doc. 1, p. 32, ¶¶ 105-106). Mr. McCutcheon asserts that QBR and others caused false claims to be submitted for payment by the United States through its agencies in violation of 31 U.S.C. § 3729(a)(1)(B) based on the false certifications of the CMS Form 1500. (Doc. 1, pp. 41-43, ¶¶ 141-144).

With these allegations, Mr. McCutcheon has stated a substantive FCA claim and has established that a sufficient basis exists in the pleadings for the relief sought. Therefore, the Court must determine the proper remedy for QBR's violation of the FCA. A court must "assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007); *see also PNCEF, LLC v. Hendricks Bldg. Supply, LLC*, 740 F. Supp. 2d 1287, 1292 (S.D. Ala. 2010) (explaining that though a defaulted defendant admits well-pleaded

allegations of liability, "allegations relating to the amount of damages are not admitted by virtue of default").

A civil defendant under the FCA "is liable to the United States Government for a civil penalty of not less than $5,000.00 and not more than $10,000" and "3 times the amount of the damages which the Government sustains because of the act of the [defendant]." 31 U.S.C. § 3729(a)(1). Mr. McCutcheon seeks a judgment against QBR for $16,034,759.55 for treble damages (the $5,344,919.85 determined as restitution to the federal payors in Mr. Hornbuckle's criminal case multiplied by three). Mr. McCutcheon also seeks a statutory penalty of $5,500.00 for each false claim. (Doc. 58, p. 9). Mr. McCutcheon has provided evidence that "there are at least 15,231 false claims submitted for payment because of the conduct of QBR and Hornbuckle under the schemes described in the complaint." (Doc. 58, pp. 9-10; Doc. 58-1, p. 4; Doc. 58-2, p. 4). Accordingly, the Court will impose a statutory penalty of $83,770,500.00. The Court will award total damages of $99,805,259.00.

Mr. McCutcheon also seeks an award of attorney fees. (Docs. 64, 65). The FCA provides that a relator's attorney fees and costs "shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1). Federal courts have applied the standard "lodestar" method to determine reasonable attorney fees under the FCA. *United States, et rel. Burr v. Blue Cross and Blue Shield of Fla.*, 882 F. Supp. 166, 169 (M.D. Fla. 1995) (citing cases). Under the lodestar method, the calculation of a

reasonable fee award begins with multiplication of "the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The fee applicant must "establish[] entitlement" to fees and document "the appropriate hours and hourly rates." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

In determining the reasonableness of the requested hourly rate and the reported hours an attorney spent on a case, a district court should consider twelve factors "derived from the ABA Code of Professional Responsibility DR 2-106 (1980) and adopted in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Norman*, 836 F. 2d at 1299. The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19 (internal quotations omitted). A district court is "an expert on the question of fees, and may consider its own knowledge and experience in making a fee award." *Davis v. Nat'l Med. Enters., Inc.*, 253 F.3d 1314, 1322 n.12 (11th Cir. 2001). Although a district court has "wide discretion" in determining the

amount of a fee award, the court must "articulate the decision it made, give principled reasons for those decisions, and show its calculation." *Loranger*, 10 F.3d at 781.

Mr. McCutcheon seeks the following fees for the work performed by attorneys Battle and Plant and paralegals Rodgers and Borden:

| Timekeeper | Rates | Hours | Lodestar |
|---|---|---|---|
| Robert E. Battle | $525<br>$550 | 24.8<br>11.4 | $19,290.00 |
| Adam P. Plant | $465<br>$490 | 64.2<br>91.7 | $74,786.00 |
| Amy Rodgers | $200 | 15.7 | $3,140.00 |
| Sara Borden | $200 | 14.9 | $2,980.00 |
|  | **Totals** | 222.7 | $100,196.00 |

(Doc. 65, pp. 12, 14). Because the claimed fees include work "directly attributable to prosecuting [the] case against parties who have settled," Mr. McCutcheon has reduced the requested fees by 12.7 hours and "by the pro rata share of overall attorney's fees those settling parties paid" to avoid double recovery. (Doc. 65, p. 14). Accordingly, Mr. McCutcheon requests a total of $60,177.90 in attorney and paralegal fees. (Doc. 65, p. 14). Based on the factors in *Johnson* and on the record before it, the Court concludes that the claimed hourly fees and number of hours requested are reasonable.

Under § 3730(d)(1), Mr. McCutcheon seeks $2,243.48 in reimbursement for costs, including filing fees and court costs, mileage, online legal research, and shipping. (Doc. 65, pp. 16-17; Doc. 65-1, pp. 20, 42). Mr. McCutcheon has reduced the costs by the pro rata share of costs paid by settling parties. (Doc. 65, p. 17). "[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, . . . may be taxed as costs." *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1192 (11th Cir. 1983). The Court find these costs reasonable.[3]

## Conclusion

Therefore, by separate order, the Court will enter a default judgment as to defendant QBR and award damages and fees in the amounts discussed above.

**DONE** and **ORDERED** this October 3, 2024.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[3] Mr. McCutcheon may submit a supplemental declaration concerning time and expenses later should his attorneys invest additional time in this case. (Doc. 65, p. 17).