CIVIL ACTION CASE: 5:17-CV-0462-MHH

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
2024 NOV -8 A 10: 56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES OF AMERICA,**
**ex rel, CHRISTOPHER N. MCCUTCHEON**

**PLAINTIFFS,**

**v.**

**CIVIL ACTION NUMBER**
**5:17-CV-0462-MHH**

**JOHN HORNBUCKLE**
**Defendant.**

## ANSWER TO MEMORANDUM OPINION

Due to the fact that, Plaintiff "Relator" Christopher N. McCutcheon who has been deemed to have unclean hands was never appointed as a principal officer of the court thereby never had standing with the court which causes the court to not have competent subject matter jurisdiction. The "relator" McCutcheon never had standing before the court if the "relator" was never properly appointed as a Principal Officer of the courts. If the "relator" McCutcheon was not properly appointed and did not have standing, then the court does not have Competent Subject matter Jurisdiction. The Appointment Clause can never be waived or forfeited, and Competent Subject Matter Jurisdiction must be established. With regards to this False Claim Act "Qui Tam", the "relator" is acting as an unappointed illegal prosecutor attempting to benefit from a bounty leveraging the weight of the Government as well as the fruits of a poison tree grown through a plea of guilty forced under extreme duress of death. The United States Constitution's Appointment Clause, with regards to an "officer of the United States", the Constitution's Appointment Clause says a President shall nominate and by, and with the advice and consent of the Senate (Separations of Power).

The Constitutionality of the FCA Qui Tam Provisions of the False Claim Act Qui Tam suites brought by private parties or individuals to enforce claims of the United States violate The Appointment Clause of the Constitution because Qui Tam "relator's" are "Officers of the United States" but are not appointed in accordance with requirements of the Appointment Clause. Private Qui Tam actions violate the Doctrine of Article III Standing because the relator has suffered no injury in fact (See Settlement Agreement EXHIBIT A). The Qui Tam provisions of the False Claim Act violate separation of powers doctrine because they impermissibly infringed In {LUCIA V. SEC, 585 U.S.} the Solicitor General Noel Fransisco's Opinion expressed that The Appointment Clause can never be forfeited and Lack of Competent Subject Matter Jurisdiction was acknowledged. Appointment Clause issues have been the subject of many FCA Qui Tam cases with "whistleblower" "relators" but how many contained relators who orchestrated the alleged fraud and had unclean hands through political dealings with the highest levels of politics? In LUCIA the Supreme Court outlines the construction and application of the appointments clause of Art. II, Sec. 2, cl.2, of the Federal Constitution. 101 L. ed. 2d. 1072. The appointments clause of the Constitution lays out the permissible methods of appointing officers of the United States, a class of government officials distinct from mere employees. U.S. Const. Art II, Sec.2, cl. 2. (Kagan, J., joined by Roberts, Ch. J., and

Page **1** of **3**

Kennedy, Thomas, Alito, and Gorsuch, JJ.). In LUCIA ALJs qualified as officers under U.S. Const. Art. II Sec.2, cl. 2, where, similar to Unites States Tax Court special trial Judges (STJs), they received career appointments, the appointments were created by "STATUTE", they exercised significant discretion to ensure fair and orderly adversarial hearings, issued decisions containing factual findings, legal conclusions, and appropriate remedies, and those decisions became final in the SEC declined review. In LUCIA the Petitioner was entitled to a new hearing before another ALJ as the judge who heard his case did do without an appropriate appointment. This mirrors FCA Qui Tam "Relators" who was never properly appointed as a principal officer of the court. With regards to Appointments, The Appointments clause of the Constitution lays out the permissible methods of appointing officers of the United States, a Clause of government officials distinct from mere employees. U.S. Const. Art II, Sec. 2, Cl. 2. (Kagan, J, joined by Roberts, Ch L. and Kennedy, Thomas, Alito, and Gorsuch, JJ.). With regards to Appointment of a Principle and inferior Officer; The Appointments clause prescribes the exclusive means of appointing officers. Only the President, a court of law, or head of department can do so. U.S. Constitution Art II, Sec.2, Cl. 2. (Kagan, J, joined by Roberts, Ch. J., and Kennedy, Thomas, Alito and Gorsuch, JJ.). With regards to an Officer -Continuing Position; Only the President, with the advice and consent of the Senate, can appoint a principal officer; but Congress (instead of relying on that method) may.

"This Court may not assume Article II standing to reach the merits of Appellant's case". See Colorado Outfitters Assn v. Hickenlooper, 823 F.3d 537, 543 (10th Cir. 2016) (citing Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 101-02, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). Also "A party invoking jurisdiction bears the burden of establishing its existence.
Steele Co. v. Citizens for a Better Env't, 523 U.S. 83, 104, 118 S Ct. 1003, 140 L. Ed. 2d 210 (1998). In Carr v. Sal's Judge Amy Comey Barrett's Opinion Letter, it is stated "the appointment clause can never be waived or forfeited", as it can be brought up any time.

Defendant, John Hornbuckle previously motioned for a stay in the civil matter until the 28 USC Sec. 2255 filing could be heard. Defendants 28 USC Sec. 2255 challenges criminal conviction, because plea was taken under extreme duress. If the defendant is exonerated through the 28 USC Sec. 2255 process this civil matter would become null and void, ab initio, and would not burden the court with this civil proceeding, in the interest of justice and the public good.

Furthermore, defendant moves the court to require the prosecution to show cause and produce evidence of the alleged claims, that the Defendant John Hornbuckle, did in fact made in violation of the False Claims Act 31 U.S.C. Sec. 3729. Defendant moves the court to require the prosecution produce evidence, verifying any claim the plaintiff, Chris McCutcheon may have as to a damage, upon which relief can be granted. The Plaintiff is using the FCA to establish his assumed standing, therefore the defendant, John Hornbuckle's position is that he made no such claims as to violate FCA, as is challenged in his 28 USC Sec.2255 filing therefore he is not in violation of the 31 U.S.C. Sec. 3729, False Claim Act.

Therefore, since the criminal conviction has been challenged in the fraudulent Qui Tam action via a 28 USC Sec. 2255, the conviction alone cannot stand as evidence against the defendant, as it was acquired under extreme duress and the ineffective assistance of counsel.

Therefore, if no admissible documentary evidence can be produced by the plaintiff, of claims that proves beyond the shadow of a doubt that John Hornbuckle violated the FCA, the Plaintiff has no standing and motion for relief must be denied, and vacated "Acta irrita sunt, nullam vim habent."

CIVIL ACTION CASE: 5:17-CV-0462-MHH

I, John Hornbuckle pro se, motions this court to require the prosecution to show cause and produce evidence of the alleged claims, that the Defendant John Hornbuckle, did in fact, make in violation of the False Claims Act 31 U.S.C. Sec. 3729(a)(1)(A)-(B) or 31 U.S.C. Sec. 3730(b)(1). Defendant motions the court to require the prosecution to produce evidence, verifying any claim the plaintiff, Chris N. McCutcheon may have as to a damage, or I, John Hornbuckle hereby motion this court to dismiss this case with prejudice for lack of prosecution, the relator's lack of standing, the Courts lack of Competent Subject Matter Jurisdiction and failure to state a claim upon which relief can be granted.

    Respectfully Submitted.

    John Hornbuckle

**Exhibit A**

## SETTLEMENT, MUTUAL GENERAL RELEASE, AND CONFIDENTIALITY AGREEMENT

This SETTLEMENT, MUTUAL GENERAL RELEASE, AND CONFIDENTIALITY AGREEMENT (this "**Agreement**"), dated March ___, 2017 (the "**Effective Date**"), is made by and among QBR, LLC, an Alabama limited liability company (the "**Company**"), CHRISTOPHER MCCUTCHEON, an individual ("**McCutcheon**"), and JOHN HORNBUCKLE, an individual ("**Hornbuckle**"). This Agreement sometimes refers to the Company, McCutcheon, and Hornbuckle individually as a "**Party**" and, collectively, as the "**Parties**".

### RECITALS:

A.  Hornbuckle and McCutcheon are members of the Company, which was formed to provide medical diagnostic services (the "**Diagnostic Services**"), the governance and operation of which is governed by that certain Operating Agreement for QBR, LLC, dated as of November 12, 2013 (the "**Operating Agreement**"), with Hornbuckle currently owning a fifty-one percent (51%) percentage interest in the Company and McCutcheon currently owning a forty-nine percent (49%) percentage interest in the Company (the "**Subject Interest**").

B.  The Parties are presently involved in a lawsuit styled <u>Christopher McCutcheon and QBR, LLC v. John Hornbuckle</u>, Case No. 46-CV-2016-901293, in the Circuit Court of Madison County, Alabama, in which both McCutcheon and Hornbuckle, acting in their personal capacities and on behalf of the Company, have each made claims against the other related to the Company (the "**Lawsuit**").

C.  The Parties have participated in settlement discussions and wish to reach a compromise settlement in order to fully and finally settle the Lawsuit and resolve any and all other disputes or other matters arising out of, or connected with the Lawsuit and any claims, matters, injuries or damages which were or could have been asserted in the Lawsuit.

NOW THEREFORE, in consideration of the premises and the mutual covenants and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are expressly acknowledged, the Parties agree as follows:

1.  TERMS OF SETTLEMENT. As consideration for the resolution of the Lawsuit and any and all other disputes or other matters arising out of, or connected with the Lawsuit and any claims, matters, injuries or damages which were or could have been asserted in the Lawsuit by any Party, the Parties agree to take the following actions:

(a)  <u>Membership Interest Redemption</u>. Contemporaneously with the execution and delivery of this Agreement, each Party shall execute and deliver the Membership Interest Redemption, Non-Competition, and Non-Disparagement Agreement in the form attached hereto as **Exhibit A** (the "**Membership Interest Redemption Agreement**").

(b)  <u>Assignment and Settlement Funds</u>. Contemporaneously with the execution and delivery of this Agreement and the Membership Interest Redemption Agreement: (i) McCutcheon and the Company will execute and deliver the Assignment of Membership Interest

(in the form attached to the Membership Interest Redemption Agreement as **Exhibit 1**) (the "**Assignment**") pursuant to Section 2(a) of the Membership Interest Redemption Agreement and (ii) QBR will cause to be paid to McCutcheon and his attorneys, Bradley, Arant, Boult, Cummings ("BABC"), the sum total of One Hundred Thirty Five Thousand Dollars and No/100 Dollars ($135,000) (the "**Settlement Funds**") payable in the following installments:

(1) Sixty-Thousand and No/100 Dollars ($60,000.00) in immediately available funds to McCutcheon and Fifteen Thousand and No/100 Dollars ($15,000.00) in immediately available funds to BABC payable upon (a) McCutcheon's execution and delivery of this Agreement, (b) McCutcheon's execution and delivery of the Membership Interest Redemption Agreement, and (c) dismissal, with prejudice, of the Lawsuit, as set forth in Section 1(f), below;

(2) Twenty-Two Thousand Five Hundred and No/100 Dollars ($22,500.00) payable to McCutcheon, and Seven Thousand Five Hundred and No/100 Dollars ($7,500.00) payable to BABC, by September 15, 2017; and

(3) Twenty-Two Thousand Five Hundred and No/100 Dollars ($22,500.00) payable to McCutcheon, and Seven Thousand Five Hundred and No/100 Dollars ($7,500.00) payable to BABC, by December 31, 2017.

(c) Consent Judgment. As security for the payment obligations described in the preceding paragraph, QBR agrees, that in the event of a default on said payment obligations, it will consent to judgment in favor of McCutcheon in the Circuit Court of Madison County, Alabama (in the form attached hereto as **Exhibit B**; the "**Consent Judgment**") in the amount of One Hundred Fifty Thousand and No/100 Dollars ($150,000). Provided however, that to the extent QBR has made any of the payments described in Paragraphs 1(b)(1) or (2), the amount of the consent judgment shall be reduced by the amount of the payments made by QBR and received by McCutcheon, and McCutcheon may not enforce, record, or execute upon the consent judgment so long as QBR has complied with its payment obligations in this Agreement. Upon timely payment in full of the installments set forth in Sections 1(b)(1), (2) and (3), above, the Consent Judgment shall be null and void and may not be filed, for any purpose.

(d) Tax Reporting. The Company will issue McCutcheon a Form K-1 for his share of gains or losses, and Form W-2 for the salary paid to him during 2016, in the approximate amount of $19,500, but will neither issue nor file any other tax reporting document for the taxable year 2016 with respect to McCutcheon, including, but not limed to, a Form 1099 with respect to certain alleged personal expenses of McCutcheon.

(e) Retrieval of Personal Effects. The Company shall make McCutcheon's personal effects in the Company's offices available to him.

(f) Dismissal of Lawsuit. Within two (2) business days after the payment set forth in Paragraph 1(b)(1), above, McCutcheon and Hornbuckle shall file a stipulation of dismissal, with prejudice, of the Lawsuit, along with a motion seeking a Court order directing QBR to make payment of the attorneys' fees described in Paragraph 1(b), above, in the amount and manner provided therein. Each Party hereby expressly authorizes his or its attorney to execute any and

all documents and take all actions necessary to effectuate a full, final and complete dismissal of the Lawsuit pursuant to this Section 1(f).

(g)  Costs and Attorneys' Fees. Each Party shall bear its own costs, expenses, and attorneys' fees associated with or arising out of the Lawsuit.

(h)  Car title. McCutcheon shall, within thirty (30) days hereof, take all such actions as are necessary to have his name removed from the title of that certain 2012 Toyota Prius, VIN No. JTDKN3DU6C1568244.

2.  MUTUAL RELEASES.

(a)  Defined Terms. For purposes of this Agreement, the following terms shall have the following meanings:

(i)  "**Released Claims**" means any and all liabilities, obligations, actions, causes of action, claims, suits, judgments, levies, executions, damages and demands of any kind and nature, conditional or unconditional, known or unknown, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated that any Party may have or be entitled to raise against any other Party and that arise out of the Lawsuit, the subject matter of the Lawsuit, the Subject Interest, the relationship between the Parties, and the Operating Agreement, including (A) any act, occurrence, or omission arising out of the Operating Agreement, (B) any right to payment or distribution under the Operating Agreement or in connection with the Subject Interest, or (C) any breach of any provision of the Operating Agreement. Notwithstanding the preceding sentence, Released Claims shall not include (X) any of the Parties' obligations and duties under this Agreement or (Y) any of the Parties' obligations and duties under the Membership Interest Redemption Agreement.

(ii)  "**Affiliate**" means, with respect to a Party, any entities directly or indirectly controlling, controlled by, or under common control with such Party.

(b)  By Hornbuckle. Hornbuckle, on behalf of himself, his successors, heirs, assigns, employees, agents, attorneys, insurers, and Affiliates: (i) irrevocably and unconditionally waives, releases, and forever discharges McCutcheon, and McCutcheon's successors, heirs, assigns, employees, agents, attorneys, insurers, and Affiliates (collectively, the "**McCutcheon Parties**") from any and all Released Claims that Hornbuckle may have or be entitled to claim against any of the McCutcheon Parties; and (ii) irrevocably and unconditionally waives all relief, legal and equitable, Hornbuckle may be able to seek from the McCutcheon Parties with respect to the Released Claims, including compensatory damages, punitive damages, lost profits, attorneys' fees, expenses, and costs.

(c)  By the Company. The Company, on behalf of itself, its agents, employees, members, officers, successors, assigns, attorneys, insurers, and Affiliates: (i) irrevocably and unconditionally waives, releases, and forever discharges the McCutcheon Parties and Hornbuckle and Hornbuckle's successors, heirs, assigns, employees, agents, attorneys, insurers, and Affiliates (collectively, the "**Hornbuckle Parties**") from any and all Released Claims that the Company may have or be entitled to claim against the McCutcheon Parties or the Hornbuckle

Parties; and (ii) irrevocably and unconditionally waives all relief, legal and equitable, the Company may be able to seek from the McCutcheon Parties or the Hornbuckle Parties with respect to the Released Claims, including compensatory damages, punitive damages, lost profits, attorneys' fees, expenses and costs.

(d) By McCutcheon. McCutcheon, on behalf of himself, his successors, heirs, assigns, employees, agents, attorneys, insurers, and Affiliates: (i) irrevocably and unconditionally waives, releases, and forever discharges the Hornbuckle Parties and the Company, and the Company's agents, employees, members, officers, successors, assigns, attorneys, insurers, and Affiliates (collectively, the "**Company Parties**") from any and all Released Claims that McCutcheon may have or be entitled to claim against the Hornbuckle Parties or the Company Parties; and (ii) irrevocably and unconditionally waives all relief, legal and equitable, McCutcheon may be able to seek from the Hornbuckle Parties or the Company Parties with respect to the Released Claims, including compensatory damages, punitive damages, lost profits, attorneys' fees, expenses and costs.

(e) Ownership of Claims. Each Party represents and warrants to the other Parties that such Party has not assigned, transferred, or conveyed, or purported to assign, transfer, or convey, and each Party covenants that such Party will not assign, transfer, or convey to any third party, any right or interest that it may have with respect to any Released Claim.

(f) Knowledge of Risk of Release. The Parties understand there is a risk that, subsequent to the execution of this Agreement, they may discover claims or facts in addition to, or different from, those which they know of or believe to exist, in connection with the Lawsuit. Notwithstanding this, it is the Parties' intention to assume the risk of such unknown and unanticipated claims with respect to the Lawsuit. For the purpose of implementing a full and complete release and discharge of the Lawsuit, the Parties expressly acknowledge that this Agreement and its releases are intended to include all claims arising out or related to the Lawsuit, even those which any one or more of the Parties do not know or suspect to exist at the time this Agreement is signed and, further, that this Agreement extinguishes and discharges any and all such claims arising out of or related to the Lawsuit, except as set forth in this Agreement. The Parties acknowledge that this release was bargained for, and that there are no representations by, or conduct of, anyone being relied upon by them in entering into this release, except as specifically provided herein.

3. CONFIDENTIALITY. The Parties shall keep this Agreement, the Membership Interest Redemption Agreement (except with respect to the disclosure permitted under Section 5 therein), the Mediation Settlement Agreement, and the Assignment (collectively the "**Settlement Documents**") confidential and shall not provide access to or disclose any of its terms or provisions to any person other than their respective attorneys, accountants, financial planners, or tax advisors. Notwithstanding the foregoing, the Parties may disclose the terms and provisions of the Settlement Documents if and to the extent required by applicable law in the reasonable opinion of such Party's legal counsel; and, if such disclosure is made in a manner that complies with the provisions of this Section 3, the disclosing Party shall have no liability to the other Party for such disclosure. To enable the non-disclosing Party, at its option, to obtain a protective order or other remedy or to waive compliance with the provisions of this Section 3, if either Party is

requested to disclose the terms and provisions of any Settlement Document, such Party shall immediately notify the other Party of such request. If the other Party elects to seek a protective order or other remedy, such Party shall cooperate with and shall not object to, any such action. If the other Party does not obtain a protective order or other remedy, or waives compliance with the provisions of this Section 3, such Party shall only disclose the specific portion of the applicable Settlement Document that such Party is legally required to disclose. This Section 3 shall not prohibit a Party from introducing any Settlement Document as evidence in any action or proceeding for the enforcement or breach of any Settlement Document.

4.    GENERAL PROVISIONS.

(a)    Notices. Any notice, demand, or other written instrument required or permitted to be given under this Agreement must be in writing and shall be deemed to have been given when personally delivered or when deposited in the U.S. Mail, by registered or certified mail, return receipt requested, postage prepaid, prepared and properly addressed to the respective Party to whom such notice relates at the following address:

| | |
|---|---|
| If to Hornbuckle or Company: | c/o Mr. John S. Hornbuckle<br>1708 Hermitage Avenue,<br>Huntsville, Alabama 35801 |
| With a copy to: | Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.<br>420 20th Street North, Suite 1400<br>Birmingham, Alabama 35203<br>Attn: W. Patton Hahn, Esq. |
| If to McCutcheon: | Mr. Christopher N. McCutcheon<br>1685 Squire Run<br>Athens, Alabama 35613 |
| With a copy to: | Bradley Arant Boult Cummings LLP<br>200 Clinton Avenue West, Suite 900<br>Huntsville, Alabama 35801<br>Attn: G. Bartley Loftin III, Esq. |

or to such alternative addresses as may be specified by the Parties by notice given in the manner provided herein.

(b)    Entire Agreement. This Agreement, the Membership Interest Redemption Agreement, and the Assignment constitute the entire agreement and understanding of the Parties regarding their subject matter and supersede all prior agreements and understandings (whether written or oral) relating to the subject matter of this Agreement, the Membership Interest Redemption Agreement, and the Assignment.

(c) <u>Modification</u>. Neither this Agreement nor any term or provisions of this Agreement may be changed, modified, waived, discharged, or terminated orally, or in any manner other than by an instrument in writing signed by each of the Parties.

(d) <u>Joint Drafting</u>. The Parties and their respective counsel have participated in the drafting of this Agreement and the general rules of construction which would construe any provision of this Agreement in favor of or to the advantage of one Party as opposed to the other as a result of one Party drafting this Agreement as opposed to the other or in resolving any conflict or ambiguity in favor of one Party as opposed to the other on the basis of which Party drafted this Agreement are hereby expressly waived by all Parties to this Agreement.

(e) <u>Survival</u>. The obligations and agreements of the Parties shall survive the execution and delivery of this Agreement.

(f) <u>Severability</u>. Should any part of this Agreement be declared by any court of competent jurisdiction to be illegal, invalid or unenforceable, the remainder of this Agreement shall remain valid and in effect, the invalid provision shall be deemed to conform to a valid provision most closely approximating the intent of the invalid provision, and the invalid provision shall not be deemed to be a part of this Agreement.

(g) <u>No Admission of Liability</u>. The Parties hereto expressly agree that nothing contained in this Agreement constitutes, or shall be construed as, an admission of liability on the part of any Party or Parties hereto released, by whom all liability is expressly denied.

(h) <u>Binding Effect; Assignment</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and assigns, as applicable. This Agreement, and any rights, duties, or obligations hereunder, shall not be assigned by any Party without the prior written consent of the other Parties hereto.

(i) <u>Advice of Counsel</u>. In entering into this Agreement, the Parties represent that they have consulted with their own attorneys, who are the attorneys of their choice, and that the terms of this Agreement have been approved by said attorneys; have been completely read and explained to them by their attorneys; and are fully understood and voluntarily accepted by them. The Parties further acknowledge that they have had sufficient opportunity to consult with an attorney regarding the legal effect of this Agreement, including the release, and each Party acknowledges that they are satisfied with this Agreement and fully understand its terms and effect.

(j) <u>Attorneys' Fees</u>. In the event any Party must bring suit to enforce the terms contained herein, the non-prevailing Party agrees to pay the reasonable attorneys' fees and all other costs and expenses incurred by the prevailing Party in the enforcement of this Agreement.

(k) <u>Governing Law; Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Alabama, without giving effect to conflicts of law principles. The Parties hereby consent to the jurisdiction of the state courts located in Madison County, Alabama, for the resolution of any and all disputes arising from, out of, or relating to, this Agreement.

(l) <u>Waiver of Jury Trial</u>. THE PARTIES WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, TRAIL BY JURY IN ANY LITIGATION IN ANY COURT WITH RESPECT TO, IN CONNECTION WITH, OR ARISING OUT OF THIS AGREEMENT OR THE VALIDITY, INTERPRETATION, OR ENFORCEMENT OF THIS AGREEMENT.

(m) <u>Recitals</u>. The recitals to this Agreement are incorporated in, and made a part of, this Agreement.

(n) <u>Necessary Action</u>. The Parties shall perform any further acts and execute and deliver any documents, necessary to carry out the provisions of this Agreement.

(o) <u>Captions</u>. The captions or heading in this Agreement are made for convenience and general reference only and shall not be construed to describe, define, or limit the scope or intent of the provisions of this Agreement.

(p) <u>Counterparts</u>. This Agreement may be executed and delivered in facsimile and in separate counterparts each of which shall be an original and all of which taken together shall constitute one and the same agreement.

[Signature Pages to follow]

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of the Effective Date.

**COMPANY**:

**QBR, LLC**, an Alabama limited liability company

By: _____
Name: John Hornbuckle
Its: President and Chief Executive Officer

**STATE OF ALABAMA**        )
                            :
**COUNTY OF MADISON**       )

I, a Notary Public in and for said County in said State, hereby certify that John Hornbuckle, whose name as the President and Chief Executive Officer of QBR, LLC, is signed to the foregoing, and who is known to me, acknowledged before me on this day that, being informed of the contents of the above and foregoing, he, as such officer and with full authority, executed the same voluntarily for and as the act of said limited liability company.

Give under my hand and official seal of office this 24 day of march, 2017.

_____
Notary Public

[NOTARY SEAL]        My commission expires: November 4, 2020

My Commission Expires: November 4, 2020

8 Settlement, Mutual General Release, and Confidentiality Agreement

**HORNBUCKLE**:

_____
John Hornbuckle

**STATE OF ALABAMA** )
: 
**COUNTY OF MADISON** )

I, a Notary Public in and for said County in said State, hereby certify that John Hornbuckle, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this day that, being informed of the contents of the above and foregoing, he executed the same voluntarily on the day the same bears date.

Give under my hand and official seal of office this 24 day of March, 2017.

_____
Notary Public

[NOTARY SEAL]       My commission expires: **My Commission Expires: November 4, 2020**

**MCCUTCHEON**:

_____
Christopher McCutcheon

**STATE OF ALABAMA**        )
                            :
**COUNTY OF MADISON**       )

    I, a Notary Public in and for said County in said State, hereby certify that Christopher McCutcheon, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this day that, being informed of the contents of the above and foregoing, he executed the same voluntarily on the day the same bears date.

    Give under my hand and official seal of office this 27th day of March, 2017.

_____
Notary Public

[NOTARY SEAL]            My commission expires: 2/5/2018

John Hornbuckle
#96094-509
Pensacola FPC
P.O. Box 3949
Pensacola, Florida 32516





CERTIFIED MAIL
7021 2720 0001 9031 7134

Retail
35203
RDC 99

RETURN RECEIPT REQUESTED

First Class Mail

THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ALA
NORTHEASTERN DIVISION
ATTN: UNITED STATES DISTRICT
JUDGE MADELINE HUGHES H

HUGO L. BLACK UNITED STATES COU
1729 5th Avenue North

